UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS


JEANET SHERELLE MITCHELL,


Plaintiff,


v.


EQUIFAX INFORMATION SERVICES LLC,


Defendant.


Civil Action No.: _____


### JURY TRIAL DEMANDED


### COMPLAINT AND DEMAND FOR JURY TRIAL


### PRELIMINARY STATEMENT


1. I am Jeanet Sherelle Mitchell. I bring this action against Equifax Information Services LLC ("Equifax") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"). Equifax generated my consumer disclosure on March 9, 2026 (Confirmation No. 6068601325) and failed to clearly and accurately disclose all information in my file as required by 15 U.S.C. § 1681g(a)(1). Equifax also reported inaccurate information about my accounts to third parties in violation of its duty to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. § 1681e(b). In addition, Equifax continued to report two collection tradelines -- Spring Oaks Capital, LLC and Jefferson Capital LLC -- after I disputed them,

1

without notating the dispute on the reports it furnished to third parties and without conducting the reinvestigation required by 15 U.S.C. § 1681i(a).

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because I reside in this district in Weymouth, Massachusetts, and the acts and omissions giving rise to my claims occurred in this district.

## PARTIES

4. I, Jeanet Sherelle Mitchell, am a natural person residing at 103 Colonels Lane, Unit TH5, Weymouth, Massachusetts 02189, and a "consumer" as defined by 15 U.S.C. § 1681a(c).

5. Defendant Equifax Information Services LLC ("Equifax") is a Georgia limited liability company with its principal place of business at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) in that, for monetary fees and on a cooperative nonprofit basis, it regularly engages in the practice of assembling and evaluating consumer credit information for the purpose of furnishing consumer reports to third parties, using means and facilities of interstate commerce. Equifax is aware of its obligations under the FCRA.

## FACTUAL ALLEGATIONS

### I. My Equifax Consumer Disclosure

6. On March 9, 2026, I requested and received a copy of my consumer disclosure from Equifax. Equifax generated that disclosure bearing Confirmation No. 6068601325.

7. Pursuant to 15 U.S.C. § 1681g(a)(1), upon receiving my request, Equifax was required to clearly and accurately disclose to me all information in my file at the time of the request.

2

8. Equifax's March 9, 2026 disclosure contains multiple tradelines. As detailed below, Equifax failed to disclose required data fields across several accounts, reported inaccurate information to third parties, and continued to report two actively disputed collection accounts without proper dispute notation after my disputes were received and while reinvestigation was purportedly underway.

## II. Missing and Incomplete File Disclosure

9. Equifax's March 9, 2026 disclosure omits or fails to clearly disclose the following specific data for the following accounts:

a. Spring Oaks Capital, LLC (Account No. *5055): The Account Status field is completely blank -- no status code is reported for this collection account. The Terms Frequency, Scheduled Payment Amount, Actual Payment Amount, Date of Last Payment, Date Closed, and Activity Designator fields are all blank. Under Metro 2 standards, every tradeline must carry a populated Account Status code, and every collection account must carry a Terms Frequency designator. The absence of a status code on this tradeline makes it impossible for me to determine what status Equifax is reporting for this account or to assess the accuracy of that status. On information and belief, Spring Oaks Capital reported a complete Account Status code to Equifax, and that information was in Equifax's file at the time of my March 9, 2026 request.

b. Jefferson Capital LLC (Account No. *0623): The Account Status field is completely blank -- no status code is reported. The Terms Frequency, Scheduled Payment Amount, Actual Payment Amount, Date of Last Payment, Date Closed, and Activity Designator fields are all blank. On information and belief, Jefferson Capital reported a complete Account Status code to Equifax, and that information was in Equifax's file at the time of my March 9, 2026 request.

c. American Honda Finance (Account No. *6276): The Date of Last Activity field is blank. The Actual Payment Amount field in the account header is blank despite the 24-month balance history table

3

reflecting actual payment entries for multiple months. On information and belief, American Honda Finance reported a complete Date of Last Activity and Actual Payment Amount to Equifax, and that information was in Equifax's file at the time of my March 9, 2026 request.

d. Dept. of Ed. (Account No. *2667): The Actual Payment Amount field in the account header is blank. The Date of Last Activity field is blank. The balance history table reflects a balance of $753 against a High Credit of $647 -- a current balance that exceeds the original loan amount by $106 -- with no narrative code in the account header explaining this balance-to-high-credit discrepancy. On information and belief, the Dept. of Ed. reported a complete Actual Payment Amount and Date of Last Activity to Equifax, and that information was in Equifax's file at the time of my March 9, 2026 request.

e. ChimeFin/Stride Bank (Account No. *6403): The Scheduled Payment Amount field in the account header is blank, yet the 24-month balance history table reflects a Scheduled Payment Amount of $379 for every month from March 2024 through March 2025 -- a full year of $379 scheduled payment entries -- that disappeared from the account header. The Credit Limit field is also blank in the account header despite the balance history table reflecting a High Credit of $768 each month. These omissions in the account header are inconsistent with the data present in Equifax's own balance history table for this account, confirming that Equifax possessed the information but failed to surface it in the disclosure.

10. On information and belief, each of the data furnishers identified in Paragraph 9 reported full account data, including status codes, payment amounts, and activity dates, to Equifax, and that information was contained within Equifax's file regarding me at the time of my March 9, 2026 request.

11. Equifax's disclosure was generated using a template that extracts database information from my file and populates it into a consumer disclosure form. On information and belief, that same template is used virtually every time a consumer requests their file from Equifax. Equifax's automated system routinely omits required data fields in the consumer-facing disclosure, even though Equifax includes complete account data in the reports it sells to third-party creditors. The Chime Fin/Stride Bank account demonstrates

this failure directly: the balance history table within the same disclosure contains the $379 scheduled payment figure that the account header omits, confirming the data was in Equifax's possession but was not disclosed.

12. The FTC Advisory Opinion to Darcy (June 30, 2000) states that a consumer reporting agency that routinely omits information does not technically comply with Section 609 because it does not provide accurate disclosure of all information in the file.

13. The failure to disclose Account Status codes for the two collection tradelines, activity dates, payment amounts, and credit limit data significantly diminished my ability to understand my consumer disclosure, assess the accuracy of each account, and identify the correct basis on which to dispute inaccurate entries. The absence of an Account Status code for Spring Oaks Capital and Jefferson Capital in particular prevented me from determining what status Equifax was reporting for those accounts or whether an error in status designation was occurring.

14. Equifax's failure to disclose all information in my file deprived me of my statutory right to a clear and accurate file disclosure under 15 U.S.C. § 1681g(a)(1). This deprivation constitutes an informational injury sufficient to support standing under Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982), in that the denial of information to which I am statutorily entitled is itself a concrete injury in fact regardless of any downstream consequence.

15. The incomplete disclosure caused me frustration and emotional distress as I attempted to understand and verify the information in my credit file, and I spent substantial time investigating the omissions and attempting to assess my accounts from the incomplete data Equifax provided.

## III. Inaccurate Information Reported to Third Parties

16. In addition to the disclosure deficiencies, Equifax reported inaccurate information about my accounts to third parties who received my consumer report.

### A. Dept. of Ed. -- Balance Reported in Excess of Original Loan Amount

5

17. The Dept. of Ed. tradeline (Account No. *2667) reports a High Credit of $647. Under Metro 2 standards, the High Credit field for an education loan reflects the original loan amount disbursed. The current balance reported by Equifax as of December 2025 is $749, and as of the March 9, 2026 report date is $753 -- each of which exceeds the original loan amount of $647 by $102 to $106. Equifax reported this tradeline to third parties showing a current balance that exceeds the original principal of the loan with no narrative code explaining whether the excess reflects capitalized interest, fees, or any other authorized amount. A student loan reporting a current balance higher than the original principal disbursed, without explanation, presents a misleading and inaccurate picture of this obligation as presented in my consumer report.

18. This specific inaccuracy in the balance-to-original-loan relationship, as presented in the consumer report furnished to third parties, presents a misleading picture of this account and my creditworthiness. See Chiang v. Verizon New England Inc., 595 F.3d 26, 37 (1st Cir. 2010) (accuracy standard requires that reported information not be misleading in a way that tends to injure the consumer).

## B. American Honda Finance -- Internal Balance History Inconsistency

19. The American Honda Finance tradeline (Account No. *6276) reflects a balance of $25,919 in November 2025 and $24,294 in December 2025. The December 2025 balance history entry shows an Actual Payment Amount of $2,044 credited on 12/26/2025. However, the scheduled payment is $677 per month. A $2,044 payment in December 2025 would represent three monthly payments applied at once, yet the October 2025 entry shows a past due amount of $677 -- one month's payment -- and the payment history grid shows 30-day late notations in both October and November 2025. Equifax is simultaneously reporting: (i) a 30-day late in November 2025, and (ii) a $2,044 payment in December 2025 that would have cured any arrears -- yet the account header carries a Date of 1st Delinquency of 02/25/2026 for the current delinquency cycle, while the payment history grid shows no delinquency marker for January or February 2026. These simultaneously reported facts are internally inconsistent and cannot all be accurate as presented.

20. This internal inconsistency in the payment history and delinquency data for the American Honda Finance account, as presented in the consumer report furnished to third parties, presents a confused and inaccurate picture of the payment history on this account.

**C. Credit One Bank -- Balance Exceeds Credit Limit**

21. The Credit One Bank tradeline (Account No. *9485) reflects a Credit Limit of $300. The High Credit field reports $331, which exceeds the stated Credit Limit of $300 by $31. The December 2025 balance history entry shows a balance of $260 against a Credit Limit of $300, while the January 2026 entry shows a balance of $261 against a Credit Limit of $300. The current balance as of the report date is $267 against a Credit Limit of $300. However, the High Credit of $331 -- the highest balance ever reached on this account -- exceeds the $300 Credit Limit by $31, with no narrative code documenting any authorized over-limit condition or temporary credit line increase that permitted a balance above the established limit. Equifax reported this tradeline to third parties showing a Highest Balance in excess of the Credit Limit without any explanation, which presents an inaccurate picture of this account.

22. This specific inaccuracy in the High Credit-to-Credit Limit relationship, as presented in the consumer report furnished to third parties, presents a misleading picture of this account and my creditworthiness.

**IV. Equifax's Continued Reporting of Disputed Accounts Without Proper Dispute Notation and Without Conducting a Reinvestigation**

23. On or before November 2025, I submitted disputes directly to Equifax disputing the accuracy of the Spring Oaks Capital, LLC tradeline (Account No. *5055) and the Jefferson Capital LLC tradeline (Account No. *0623).

24. Equifax received my disputes and acknowledged them. The narrative codes present in Equifax's own March 9, 2026 disclosure confirm Equifax's receipt and processing of my disputes. Specifically, the Spring Oaks Capital tradeline carries narrative code 166 ("Consumer Disputes This Account Information") for the months of February 2026, January 2026, December 2025, October 2025, September 2025, August 2025, July 2025, June 2025, May 2025, April 2025, and March 2025. It also carries narrative code 022 ("Consumer Disputes -- Reinvestigation in Process") for November 2025. The Jefferson Capital tradeline similarly carries narrative code 166 for February 2026, January 2026, December 2025, October 2025,

7

September 2025, August 2025, July 2025, June 2025, May 2025, April 2025, March 2025, and February 2025, and narrative code 022 for November 2025.

25. Under 15 U.S.C. § 1681i(a)(1)(A), upon receiving a consumer's dispute of the completeness or accuracy of any item of information contained in the consumer's file, Equifax was required to conduct a free and reasonable reinvestigation to determine whether the disputed information was inaccurate, and to record the current status of the disputed information or delete the item, within 30 days of receiving the dispute.

26. Under 15 U.S.C. § 1681i(a)(2)(A), Equifax was required, within five business days of receiving my dispute, to provide notice of the dispute to the furnisher -- Spring Oaks Capital, LLC and Jefferson Capital LLC -- and to include in that notice all relevant information I provided regarding the dispute.

27. As of March 9, 2026 -- more than four months after my disputes were received in November 2025, as evidenced by the first appearance of code 022 -- both the Spring Oaks Capital and Jefferson Capital tradelines remain on my Equifax consumer report carrying the same balance, the same past due amount, and the same collection status that I disputed. Equifax has not deleted these items, has not modified them, and has not provided me with the results of a completed reinvestigation demonstrating that the information was verified as accurate. The presence of narrative code 022 ("Reinvestigation in Process") running from November 2025 through at least the date of this disclosure confirms that Equifax has not completed its reinvestigation obligations within the 30-day statutory period required by 15 U.S.C. § 1681i(a)(1)(A).

28. Under 15 U.S.C. § 1681i(c), if Equifax was going to continue reporting the disputed items, it was required to include in any consumer report it furnished to third parties a notation that the information was disputed. The Account Status field for both the Spring Oaks Capital and Jefferson Capital tradelines is blank -- there is no Account Status code reported for either account. On information and belief, Equifax furnished consumer reports containing these two disputed collection tradelines to third parties during the dispute period without the required dispute notation in the Account Status field, in violation of 15 U.S.C. § 1681i(c).

29. The Jefferson Capital LLC tradeline carries a Date of 1st Delinquency of 08/01/2019. Under 15 U.S.C. § 1681c(a)(4), a consumer reporting agency may not include in a consumer report accounts placed for collection that antedate the report by more than seven years. Seven years from August 1, 2019 is August 1, 2026. While that date has not yet passed as of March 9, 2026, the proximity of this account to its

permissible reporting expiration date is a further basis for the materiality of an accurate reinvestigation. A collection account approaching the end of its permissible reporting period requires especially careful verification before continued reporting, which Equifax has not provided.

30. The Spring Oaks Capital LLC tradeline carries a Date of 1st Delinquency of 11/17/2021 and a Date Opened of 05/31/2022. The underlying obligation will reach its seven-year permissible reporting expiration on approximately November 17, 2028. However, the failure to complete the reinvestigation within 30 days, combined with the continued reporting of a disputed collection without a proper Account Status code or dispute notation, establishes a violation of 15 U.S.C. § 1681i independently of the reporting window. Under *Cushman v. Trans Union Corp.*, 115 F.3d 220 (3d Cir. 1997), a consumer reporting agency that merely parrots the furnisher's response without independently evaluating the dispute has not conducted a reasonable reinvestigation. Here, Equifax's own reporting shows that neither disputed tradeline was modified or deleted following reinvestigation, and no explanation was provided to me as to the basis for verification.

## V. Equifax's Willful Conduct

31. Equifax's failure to provide complete file disclosures is not an isolated data entry error. On information and belief, Equifax has known for years that its consumer disclosure template systematically omits required data fields -- including Account Status codes for collection accounts, payment amounts, and credit limit data -- that furnishers report to Equifax and that are contained within its file. The ChimeFin/Stride Bank account demonstrates this pattern directly: the balance history table within Equifax's own disclosure contains the $379 scheduled payment figure and $768 credit limit that the account header omits, confirming the data was in Equifax's possession but was not disclosed in the account header as required. Equifax knowingly continues to use this deficient template because its automated consumer disclosure system is not designed to surface all furnisher-reported data in the consumer-facing disclosure, even though that same data is included in the consumer reports Equifax sells to third-party creditors for profit.

32. Equifax's failure to complete the reinvestigation of my Spring Oaks Capital and Jefferson Capital disputes within 30 days of receipt is not an isolated occurrence. On information and belief, Equifax routinely fails to

9

complete dispute reinvestigations within the statutory period, continues to report disputed items without proper dispute notation, and does not communicate reinvestigation results to consumers in a timely manner. This pattern of conduct is systemic.

33. Under *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007), a defendant acts willfully under the FCRA when it knowingly or recklessly disregards its statutory obligations. Equifax's continued use of a consumer disclosure template it knows to be deficient, its failure to complete reinvestigations within the 30-day statutory period, its continued reporting of disputed tradelines without proper Account Status codes or dispute notation, and its reporting of the Dept. of Ed. account with a balance exceeding the original loan amount without explanation, all constitute reckless disregard of its obligations under 15 U.S.C. §§ 1681g(a)(1), 1681e(b), and 1681i.

## COUNT I

## VIOLATION OF 15 U.S.C. § 1681g(a)(1)

## FAILURE TO CLEARLY AND ACCURATELY DISCLOSE ALL FILE INFORMATION

34. I adopt and incorporate by reference all preceding paragraphs as if fully set forth herein.

35. 15 U.S.C. § 1681g(a)(1) requires Equifax, upon my request, to clearly and accurately disclose to me all information in my file at the time of the request.

36. I requested my consumer disclosure from Equifax on March 9, 2026 and received Confirmation No. 6068601325.

37. Equifax violated 15 U.S.C. § 1681g(a)(1) by failing to clearly and accurately disclose all information in my file. Specifically, as set forth in Paragraphs 9 through 15 above, Equifax omitted the Account Status code for the Spring Oaks Capital and Jefferson Capital collection tradelines, omitted Scheduled Payment and Credit Limit data for the ChimeFin/Stride Bank account that was present in Equifax's own balance history table, omitted Actual Payment Amount and Date of Last Activity data for the American Honda Finance and Dept. of Ed. accounts, and failed to disclose a narrative code explaining why the Dept. of Ed. balance exceeds the original loan amount -- all of which information was reported by the furnishers to Equifax and was contained within my file at the time of my request.

38. As a direct result of Equifax's violation, I suffered an informational injury in fact in the form of being deprived of my statutory right to a complete and accurate file disclosure. I also suffered emotional distress and spent substantial time attempting to understand and verify my accounts from the incomplete data Equifax provided.

39. Equifax's conduct was willful within the meaning of 15 U.S.C. § 1681n and *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007), in that Equifax knowingly or recklessly used a consumer disclosure template it knew to be deficient. Equifax is therefore liable to me for the greater of my actual damages or statutory damages of not less than $100 and not more than $1,000 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), plus costs pursuant to 15 U.S.C. § 1681n(a)(3).

40. In the alternative, Equifax's conduct was negligent within the meaning of 15 U.S.C. § 1681o, and Equifax is therefore liable to me for my actual damages plus costs pursuant to 15 U.S.C. § 1681o(a).

## COUNT II

### VIOLATION OF 15 U.S.C. § 1681e(b)

### FAILURE TO FOLLOW REASONABLE PROCEDURES TO ASSURE MAXIMUM POSSIBLE ACCURACY

41. I adopt and incorporate by reference all preceding paragraphs as if fully set forth herein.

42. 15 U.S.C. § 1681e(b) requires Equifax, whenever it prepares a consumer report, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

43. Equifax violated 15 U.S.C. § 1681e(b) by reporting inaccurate information about my accounts to third parties as follows:

   a. Equifax reported the Dept. of Ed. account (No. *2667) with a current balance of $749-$753 against an original loan amount (High Credit) of $647 -- a balance that exceeds the original principal by $102 to $106 -- with no narrative code explaining whether the excess represents capitalized interest, fees, or

11

any other authorized amount. This creates a specific inaccuracy in the balance-to-original-loan relationship as presented in my consumer report.

b. Equifax reported the American Honda Finance account (No. *6276) with simultaneously reported 30-day late notations in October and November 2025, a $2,044 payment in December 2025 that would have cured any arrears, and a Date of 1st Delinquency of 02/25/2026 reflecting a new delinquency cycle -- yet the payment history grid shows no delinquency marker for January or February 2026. These internally inconsistent facts cannot all be accurate as presented and result in a confused and inaccurate picture of the payment history on this account.

c. Equifax reported the Credit One Bank account (No. *9485) with a High Credit of $331 exceeding the stated Credit Limit of $300 by $31, with no narrative code documenting any authorized over-limit condition, creating a specific inaccuracy in the account's balance-to-limit relationship as presented in my consumer report.

44. Each of these inaccuracies resulted from Equifax's failure to follow reasonable procedures to assure maximum possible accuracy, including the failure to compare reported balances against original loan amounts and reported credit limits before furnishing consumer reports, and the failure to resolve internally inconsistent delinquency and payment data before reporting to third parties.

45. As a result of Equifax's violations, my consumer report was furnished to third parties containing inaccurate information about my accounts, causing me a concrete injury in fact under *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). I also suffered emotional distress and reputational harm from the dissemination of inaccurate account information to third parties.

46. Equifax's conduct was willful within the meaning of 15 U.S.C. § 1681n and *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007). Equifax is therefore liable to me for the greater of my actual damages or statutory damages of not less than $100 and not more than $1,000 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), plus costs pursuant to 15 U.S.C. § 1681n(a)(3).

47. In the alternative, Equifax's conduct was negligent within the meaning of 15 U.S.C. § 1681o, and Equifax is therefore liable to me for my actual damages plus costs pursuant to 15 U.S.C. § 1681o(a).

## COUNT III

## VIOLATION OF 15 U.S.C. § 1681i(a)(1)(A)

## FAILURE TO CONDUCT A REASONABLE REINVESTIGATION WITHIN 30 DAYS

48. I adopt and incorporate by reference all preceding paragraphs as if fully set forth herein.

49. 15 U.S.C. § 1681i(a)(1)(A) requires Equifax, upon receiving a consumer's dispute regarding the completeness or accuracy of any item of information in the consumer's file, to conduct a free and reasonable reinvestigation to determine whether the disputed information is inaccurate and to record the current status of the disputed information or delete the item before the end of the 30-day period beginning on the date it receives the dispute.

50. On or before November 2025, I disputed the accuracy of the Spring Oaks Capital, LLC tradeline (Account No. *5055) and the Jefferson Capital LLC tradeline (Account No. *0623) directly with Equifax. Equifax received those disputes, as confirmed by the appearance of narrative code 022 ("Consumer Disputes -- Reinvestigation in Process") on both tradelines beginning in November 2025.

51. As of March 9, 2026 -- more than four months after Equifax received my disputes -- both tradelines remain on my consumer report in unchanged form, still carrying the same balance ($2,223 for Spring Oaks Capital; $658 for Jefferson Capital), the same past due amount, and the same collection payment history that I disputed. Equifax has neither deleted these items nor provided me with the results of a completed reinvestigation establishing a verified basis for continued reporting. Code 022 continued to appear on both accounts as of the November 2025 reporting period, confirming no reinvestigation was completed within the 30-day statutory window.

52. Equifax's failure to complete the reinvestigation within 30 days and either delete or update the disputed items constitutes a violation of 15 U.S.C. § 1681i(a)(1)(A). Under *Cushman v. Trans Union Corp.*, 115 F.3d 220 (3d Cir. 1997), a reinvestigation that merely perpetuates the original reporting without independent evaluation does not satisfy the FCRA's reasonableness standard. Here, the continued presence

13

of code 022 for months without resolution, and the unchanged character of both tradelines, establishes that no meaningful reinvestigation was conducted or completed.

53. As a direct result of Equifax's violation, both disputed collection tradelines continued to appear on my consumer report and to be furnished to third parties during the extended dispute period, causing me concrete harm including damage to my creditworthiness, emotional distress, and the continued dissemination of information I disputed as inaccurate to potential creditors and other users of my consumer report.

54. Equifax's conduct was willful within the meaning of 15 U.S.C. § 1681n and *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007). Equifax is therefore liable to me for the greater of my actual damages or statutory damages of not less than $100 and not more than $1,000 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), plus costs pursuant to 15 U.S.C. § 1681n(a)(3).

55. In the alternative, Equifax's conduct was negligent within the meaning of 15 U.S.C. § 1681o, and Equifax is therefore liable to me for my actual damages plus costs pursuant to 15 U.S.C. § 1681o(a).

## COUNT IV

## VIOLATION OF 15 U.S.C. § 1681i(c)

## FAILURE TO NOTE CONSUMER DISPUTE IN REPORTS FURNISHED TO THIRD PARTIES

56. I adopt and incorporate by reference all preceding paragraphs as if fully set forth herein.

57. Under 15 U.S.C. § 1681i(c), whenever a consumer notifies a consumer reporting agency of a dispute regarding the completeness or accuracy of any item of information in the consumer's file, the consumer reporting agency must clearly note that the information is disputed by the consumer in any subsequent consumer report containing the information.

58. After receiving my disputes of the Spring Oaks Capital (No. *5055) and Jefferson Capital (No. *0623) tradelines on or before November 2025, Equifax continued to furnish consumer reports containing both tradelines to third parties. The Account Status field for both tradelines is blank on the face of Equifax's own disclosure -- there is no Account Status code reported for either account. On information and belief, when

Equifax furnished consumer reports to third parties containing these two disputed tradelines, it did not include the dispute notation required by 15 U.S.C. § 1681i(c) in the Account Status field or otherwise in the tradeline data reported to those third parties.

59. As a direct result of Equifax's failure to include the required dispute notation in consumer reports furnished to third parties, third parties who received my consumer report during the dispute period were not informed that I disputed the accuracy of these collection accounts, causing me concrete harm including damage to my creditworthiness and emotional distress.

60. Equifax's conduct was willful within the meaning of 15 U.S.C. § 1681n and *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007). Equifax is therefore liable to me for the greater of my actual damages or statutory damages of not less than $100 and not more than $1,000 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), plus costs pursuant to 15 U.S.C. § 1681n(a)(3).

61. In the alternative, Equifax's conduct was negligent within the meaning of 15 U.S.C. § 1681o, and Equifax is therefore liable to me for my actual damages plus costs pursuant to 15 U.S.C. § 1681o(a).

## PRAYER FOR RELIEF

WHEREFORE, I respectfully request that this Court enter judgment in my favor against Equifax Information Services LLC and award the following relief:

a. The greater of my actual damages or statutory damages of not less than $100 and not more than $1,000 per violation, pursuant to 15 U.S.C. § 1681n(a)(1)(A), for each willful violation of the FCRA;

b. Punitive damages in an amount to be determined by the jury, pursuant to 15 U.S.C. § 1681n(a)(2), for Equifax's willful violations of the FCRA;

c. My actual damages pursuant to 15 U.S.C. § 1681o(a)(1), in the alternative, for any violations found to be negligent rather than willful;

   d. Costs of suit pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2); and

   e. Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

I demand a jury trial on all issues so triable.

Respectfully submitted,

_Jeanet Mitchell_

Jeanet Sherelle Mitchell

Pro Se Plaintiff

103 Colonels Lane, Unit TH5

Weymouth, MA 02189

857-991-8480

JeanetJenkins@gmail.com

Dated: 4-1-26